[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 27 2000
THOMAS K. KAHN
CLERK

————————————————

No. 99-8290

————————————————

D.C. Docket No. 1:97-CV-719-TWT

JENNIFER ANN ABEL,

Plaintiff-Appellant,

versus

RONALD DUBBERLY, GLADYS DENNARD, and
FULTON COUNTY,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

**(April 27, 2000)**

Before EDMONDSON and MARCUS, Circuit Judges, and HANCOCK[*], Senior
District Judge.

PER CURIAM:

---

[*] Honorable James H. Hancock, Senior U.S. District Judge for the Northern District of Alabama,
sitting by designation.

Plaintiff Abel appeals the district court's granting of a renewed motion for judgment as a matter of law as to her Title VII claim against her former employer, Defendant Fulton County, and her section 1983 claim against her former supervisor, Defendant Gladys Dennard. Because this Court finds that Abel did not show that she was treated dissimilarly to any similarly situated fellow employees, the judgment of the district court is due to be affirmed.

## I. Factual and Procedural History

Abel was formerly employed by Defendant Fulton County as a Library Principal Associate. She was hired in October of 1994 and was initially assigned to the Washington Park Branch of the Atlanta-Fulton County Public Library, but in May of 1995, she was transferred to the South Fulton Branch. Abel was the first Caucasian to be assigned to the South Fulton Branch, where Defendant Dennard, an African-American female, was her supervisor. From the start, Dennard and Abel did not have a good working relationship.

On December 8, 1995, Abel took $10.00 from the library's cash register to purchase gasoline for her personal car, which she then drove to the bank to deposit her pay check. Abel put a signed I.O.U. in the register after taking the cash, and replaced the $10.00 on December 12, 1995, her next day on the job. Dennard met with Abel on December 12 about the I.O.U. incident. Abel freely admitted taking

the money, but insisted that she believed that the practice was acceptable. In fact, Abel's actions violated a strict policy against personal use of county funds for which the penalty was termination, and Dennard informed her that she would be charged with theft and that a record of the meeting would be made.

Abel eventually filed two grievances concerning the December 12 meeting with Dennard. At a grievance meeting with the library branch's group manager, Julie Compton, Abel again freely admitted to taking the $10.00 from the cash register. At a still later meeting with the library director, Defendant Ronald Dubberly, Abel also confessed to taking the $10.00 from the cash register. By the time she met with Dubberly, the termination process was already under way, and Abel was officially informed, on July 3 or 5, 1996, of her firing for misuse of county funds.

Abel believed that the I.O.U. incident was used merely as a pretext and that race was the real factor for her termination because, she argued, an African-American employee had also taken county money but had not been similarly disciplined and an African-American male had taken her position at South Fulton. Acting on her belief, Abel filed suit in federal court, alleging claims under 42 U.S.C. § 2000e (the Title VII claim), 42 U.S.C. § 1983, and various state law theories. The Title VII claim against Fulton County and the section 1983 claims

against Dubberly and Dennard survived a motion for summary judgment. A jury trial was held; Defendants moved, under Federal Rule of Civil Procedure 50(a), for judgment as a matter of law, which was denied; and the jury found in favor of Abel as to the Title VII claim against Fulton County and the section 1983 claim against Dennard. However, the jury found in favor of Dubberly on Abel's other section 1983 claim.

The jury verdicts in favor of Abel, though, would not stand. After the trial, Fulton County and Dennard renewed their motion for judgment as a matter of law, under Federal Rule of Civil Procedure 50(b). During a hearing approximately two months after the trial, the district court granted the Defendants' renewed motion for judgment as a matter of law. Abel timely appealed.

## II. Discussion

A Rule 50 motion for judgment as a matter of law is reviewed de novo, and this Court applies the same standards employed by the district court. See Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997). We consider whether such sufficient conflicts exists in the evidence to necessitate submitting the matter to the jury or whether the evidence is so weighted in favor of one side that that party is entitled to succeed in his or her position as a matter of law. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc). Although we

4

look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts.  See id. (citing Walker v. NationsBank of Florida, N.A., 53 F.3d 1548, 1555 (11th Cir. 1995)).  A substantial conflict in the evidence is required before a matter will be sent to the jury.  See Combs, 106 F.3d at 1526.  As we very recently stated, "[a] motion for judgment as a matter of law will be denied only if 'reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions.'"  See Mendoza, 195 F.3d at 1244 (quoting Walker, 53 F.3d at 1555).

Before turning to the merits of Abel's appeal, we must address two preliminary matters.  First, Abel argues that Rule 50 motions are rarely granted when summary judgment against a plaintiff has already been denied, suggesting that we should affirm merely on the basis of that rarity.  Binding precedent in this Circuit,[1] however, expressly permits consideration of a Rule 50 motion after the denial of summary judgment.  See Gross v. Southern Ry. Co., 446 F.2d 1057, 1060 (5th Cir. 1971) ("It is settled in this Circuit, therefore, that prior denial of summary judgment does not rule out the possibility of a subsequent directed verdict.");

---

[1] See Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (adopting as binding precedent in the new Eleventh Circuit the decisions of the former Fifth Circuit prior to the close of business on September 30, 1981).

Gleason v. Title Guarantee Co., 317 F.2d 56, 58 (5th Cir. 1963) ("Sound practical reasons . . . may justify a trial judge's denying summary judgment even on the identical evidence supporting his granting a directed verdict."); Stanley v. Guy Scroggins Constr. Co., 297 F.2d 374, 378 (5th Cir. 1961) ("This holding [reversing a grant of summary judgment] does not rule out the possibility of a directed verdict. It may be, when the evidence is in, that the district judge will find that the case should be disposed of by a directed verdict. He is free to do so."). To this day, these precedents continue to be applied in the Eleventh Circuit. See Mendoza, 195 F.3d at 1241-42, 1253 (affirming the district court's granting of a Rule 50 motion following denial of a Rule 56 motion); Walker, 53 F.3d at 1552-53, 1558 (affirming a grant of a Rule 50 motion after denial of a Rule 56 motion). But see Richardson v. Leeds Police Dep't, 71 F.3d 801, 804 (11th Cir. 1995) (proscribing the district courts from granting a Rule 50(b) motion predicated on a failure to establish a prima facie case of employment discrimination after having denied both a Rule 56 motion and a Rule 50(a) motion and allowing ultimate issue of discrimination to go to the jury).

Also as a preliminary matter, Abel argues that the district court, in granting the renewed motion for judgment as a matter of law, erred because the Defendants raised issues in their Rule 50(b) motion not raised at trial in their Rule 50(a)

6

motion, and, therefore, she was denied her Seventh Amendment right to cure any

defects before the case was given to the jury. "When reviewing a trial court's

resolution of a Rule 50(b) motion, we compare the grounds originally argued by

the movant in its Rule 50(a) motion with those cited by the trial court in granting a

renewed motion for judgment as a matter of law." Ross v. Rhodes Furniture, Inc.,

146 F.3d 1286, 1289 (11th Cir. 1998). If the two sets of grounds are closely

related, then no Seventh Amendment violation exists because the non-movant was

not subjected to unfair surprise; however, if the grounds are not closely related,

then the district court may not rely on the later-advanced grounds in granting the

motion. See id. Here, even if we precluded the district court from relying on the

grounds which Abel asserts were not raised at trial and employed the "any

evidence standard" of Rhodes, 146 F.3d at 1290, adequate additional grounds,

which were raised at trial,[2] exist supporting our affirmance of the district court's

granting of judgment as a matter of law. See Johnson Enters. v. FPL Group, Inc.,

162 F.3d 1290, 1311 & n.50 (11th Cir. 1998); Magluta v. Samples, 162 F.3d 662,

664 (11th Cir. 1998) ("We note that we may not reverse a judgment of the district

---

[2] In their oral Rule 50(a) motion at the close of Plaintiff's case-in-chief, the Defendants explicitly raised Abel's failure to offer evidence demonstrating the existence of any similarly situated but differently treated co-employee and also placed her on notice that Defendants believed she had failed to produce any evidence showing that the legitimate, nondiscriminatory reasons advanced for Plaintiff's termination were mere pretext. (Trial Tr. 229-31.) These same grounds were fully developed in their written Rule 50(b) motion, filed ten days after entry of judgment.

7

court if it can be affirmed on any ground, regardless of whether those grounds were used by the district court."); Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558, 1561 (11th Cir. 1992) (stating "that this court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court").  In short, regardless of the standards used in reviewing the lower court's decision, Abel would still not prevail in her appeal.

The outcome on the merits of Abel's suit is dictated by our prior Title VII decisions,[3] as illustrated by Jones v. Gerwens, 874 F.2d 1534 (11th Cir. 1989). The plaintiff in Jones, like Abel, admitted to his employer violating the work rules for which he was disciplined and also claimed that fellow employees of another race had committed the same violations but had not been as severely punished for their transgressions.  See Jones, 874 F.2d at 1540-41.  In Jones, we noted that "an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation" and that an "[a]dmission of misconduct provides sufficient foundation for an employer's

_____

[3] The same analysis applies to the Plaintiff's section 1983 claim against Dennard, as discriminatory intent is an element to be shown in the same manner as in an alleged Title VII violation when the two claims arise from the same conduct and constitute parallel remedies.  See Richardson v. Leeds Police Dept., 71 F.3d 801, 805 (11th Cir. 1995); Cross v. State of Ala., 49 F.3d 1490, 1507-08 (11th Cir. 1995).

good faith belief that an employee has engaged in misconduct." See id. at 1540.

We then found that the plaintiff had not met his burden of showing that his conduct

was similar to that of dissimilarly treated employees of another race. See id. at

1541.

Although the setting is somewhat different in the present case, we reach the

same ultimate conclusion as in Jones. First, although Abel claims that she was

similarly situated to an African-American employee who also took county funds

for personal use, a key difference is readily apparent between Abel and the

purported comparator.[4] Whereas Abel has always freely admitted having taken

$10.00 from the cash register,[5] the other employee has never confessed to taking

county funds for personal use; at worst, the would-be comparator has admitted to

temporarily misplacing funds. Abel did not offer any evidence sufficient to show

that she was similarly situated to any other employee, and absent some other

---

[4] Abel attempted to compare her treatment to that of several African-American female employees, but apparently only one of those other individuals was ever suspected or accused of taking county funds for personal use, and whether that individual was ever really suspected by anyone other than Plaintiff is a matter of contention. Because a comparator must have engaged in at least similar or comparable misconduct to that of the disciplined worker, Jones, 874 F.2d at 1534 & n.12, we take time to analyze the behavior of only that co-worker that Abel claims also took county funds for personal use.

[5] Although termination may, to some, seem a draconian response given the level of the Plaintiff's offense, the reasonableness of Fulton County's disciplinary policies are not a consideration. As we have said before, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984).

9

similarly situated but differently disciplined worker, there can be no disparate treatment. See Jones, 874 F.2d at 1540-41; Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185-87 (11th Cir. 1984). Furthermore, even if one grants that a similarly situated employee was treated in a different manner, Abel's admission that she took the money rebuts any prima facie case of discrimination, Jones, 874 F.3d at 1540, and Abel still never came close to offering evidence even suggesting either that the Defendants' explanation for her termination warrants disbelief, which would permit but not compel a jury to find in Plaintiff's favor, or that some illegal, discriminatory intent as opposed to purely personal or otherwise non-prohibited animus truly motivated the personnel involved in her termination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). Finally, we conclude that apart from her termination, Abel has not demonstrated any other conditions of her employment or her treatment by Dennard severe enough to constitute a violation of Plaintiff's civil rights. See Edwards v. Wallace Community College, 49 F.3d 1517, 1521-22 (11th Cir. 1995) (discussing requirements to succeed on a hostile work environment claim).

## IV. Conclusion

Although Plaintiff Jennifer Ann Abel argued that her treatment by the Defendants violated Title VII and section 1983, she failed to show that she was

similarly situated to any differently treated employee, much less show that she was discriminated against on the basis of race or another illegal factor.  Because Abel demonstrated neither disparate treatment nor discriminatory intent, the district court did not err in granting judgment as a matter of law to the Defendants Fulton County and Gladys Dennard.  Therefore, the decision below is AFFIRMED.