Jacolyn Rancourt **JENKS**[1], Plaintiff,

v.

**CITY OF GREENSBORO**, Defendant.

No. 1:05CV00767.

United States District Court, M.D. North Carolina.

July 2, 2007.

---

1. Plaintiff was known as Jacolyn (or Jackie) Rancourt during the course of her employment with the City of Greensboro. She subsequently married and now uses the name Jacolyn Rancourt Jenks.

Jonathan Wall, Robertson Medlin & Troutman, PLLC, Greensboro, NC, for Plaintiff.

Martin N. Erwin, Smith Moore, L.L.P., Greensboro, NC, for Defendant.

### AMENDED ORDER and JUDGMENT

OSTEEN, District Judge.

In this Standing Order 30 proceeding, the Magistrate Judge has recommended that Defendant's Motion for Summary Judgment be granted. Plaintiff and Defendant filed timely objections to the recommendation.

This court has conducted a review of the file and has determined that the recommendation of the Magistrate Judge is appropriate and should be adopted.

For the reasons set forth in the Magistrate Judge's recommendation of March 29, 2007,

IT IS ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment [Doc. No. 22] is granted and this action is dismissed with prejudice.

### RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

ELIASON, United States Magistrate Judge.

Plaintiff was employed as a rookie firefighter with the Greensboro Fire Department ("the Department") beginning in March 2004. She contends that her termination from the Department in August of that year violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Specifically, Plaintiff claims that she was disciplined more harshly than similarly situated male firefighters. Defendant now moves for summary judgment.

The facts, in the light most favorable to Plaintiff, are as follows. On the night of June 27, 2004, Plaintiff attended a gradua-

tion party for her rookie class at the Firemen's Club in Greensboro. According to several witnesses, firefighter Chris Hicks was asked to leave the party by Plaintiff and others because the presence of his girlfriend, Rachel Kilby, was upsetting to Captain Ed Smithey, who had previously dated her. When Hicks refused to leave, a heated discussion arose outside the building between Hicks and rookie firefighter Cory Hylton. Hicks allegedly addressed a racial slur toward Hylton, who then lunged toward Hicks in an apparent attempt to strike him. Hylton inadvertently struck a female firefighter, Bridget Hampton, in the jaw during the altercation.

Following this incident, Plaintiff again injected herself into the controversy by asking Hicks and Kilby to leave, and another verbal altercation ensued in the parking lot. Plaintiff claims that Hicks screamed at her and shoved her against the door of his truck, and they both used profanity at each other. During this time, she told Kilby to shut up and go home. Kilby also yelled at her and threatened to "kick her ass."

When Kilby again yelled at Plaintiff, in response, Plaintiff approached the passenger side of the truck where Kilby was seated, at which point Plaintiff and Kilby grabbed and pulled at each other through the truck window while arguing. Eventually, Hicks and another firefighter pulled the two apart, and Hicks and Kilby drove away.

The next day, Captain Smithey reported the altercation between Hicks and Hylton to Assistant Chief Skip Nix and Battalion Chief Terry Hohn of the Greensboro Fire Department, and Nix informed him that an investigation would take place. Later that day, Hicks contacted Nix. In an interview conducted on June 29, 2004, Hicks denied

using any racial epithets and accused Plaintiff of punching Kilby. Chief John Teeters subsequently appointed a committee consisting of Nix, Hohn, Battalion Chief O.C. Johnson, and Irish Goode, a civilian assigned to the Department's Human Resources office, to investigate both incidents and issue a recommendation. Teeters also requested an independent administrative investigation by the Internal Affairs Division of the Greensboro Police Department. After investigating both incidents and interviewing all of the involved parties and witnesses, Internal Affairs drew the following conclusions:

1. "Hicks, Hylton, and Rancourt became involved in a verbal altercation" that "almost escalated into a physical altercation" and violated Rule 3:18.4 that requires members of the Department to conduct themselves always to reflect credit on the Department. 2. There was insufficient evidence to prove or disprove the allegation of a racial slur. 3. There was insufficient evidence to prove the allegation that Hicks assaulted Rancourt. 4. Rancourt violated G.S. 14–33 by grabbing Kilby and trying to pull her out of the truck and violated Rule 3.18.12 which requires firefighters to obey all state laws. 5. Smithey failed to supervise his subordinates and neglected to report all incidents involving Rules violations by his subordinates contrary to Rule 3.18.5 that requires effective supervision.

(Teeters Aff. ¶ 4.)

In light of this report and the recommendation of the internal investigatory committee, Teeters discharged Plaintiff and demoted Smithey for at least six months, which has continued as of June 2006. Hylton and Hicks each received a five percent pay decrease for six months and a written reprimand.[2] Plaintiff claims

---

**2.** However, after reviewing Hampton's deposition testimony in this case and her interview

with Internal Affairs, the Department has now

that the disparate punishment by the Department in this instance resulted from gender discrimination.

### Summary Judgment Standard

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. *Id.* "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. *Sibley v. Lutheran Hosp. of Maryland, Inc.*, 871 F.2d 479 (4th Cir.1989).

### Discussion

Title VII makes it unlawful for an employer to discharge or "otherwise to discriminate" against an employee "because of" his or her sex. 42 U.S.C. § 2000e–2(a)(1). It is illegal for gender to be a "motivating factor" behind an employment practice even if other legitimate factors would have produced the same result. 42 U.S.C. § 2000e–2(m). Here, Plaintiff claims that Defendant, through its employ-

ees in the Greensboro Fire Department, violated this statute by terminating her employment. Specifically, **Plaintiff contends that she was terminated for** "conduct unbecoming of a firefighter," while male firefighters who engaged in similar conduct received lighter punishments.

A plaintiff can establish a Title VII disparate treatment claim through direct proof of discrimination or through presumptions by using the burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In this case, Plaintiff does not argue that she has direct evidence to prove gender discrimination. Instead, she relies on the *McDonnell Douglas* proof scheme.

■ **Under the rebuttable presumption, burden-shifting model, Plaintiff must first establish a prima facie case of disparate treatment.** *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). **To do so in the disciplinary context, Plaintiff must show that (1) she is a member of a protected class, (2) she was charged with engaging in prohibited conduct, (3) her conduct was substantially similar to that of employees outside the protected class, and (4) she was punished for that conduct more severely than employees outside the protected class.** *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir.1985)(citing *Burdette v. FMC Corp.*, 566 F.Supp. 808, 815 (S.D.W.Va. 1983)).

■ A plaintiff can still proceed even if she was disciplined for actions that could be described as misconduct. The key is whether persons not in the protected class engaged in similar misconduct, yet were

re-opened its investigation as to Hylton. (*See* Teeters Aff. ¶ 6.)

not punished or received less severe punishments. *Abasiekong v. City of Shelby,* 744 F.2d 1055, 1057 (4th Cir.1984). If Plaintiff is able to do this, Defendant must show that there was a valid reason for the apparently disparate actions it took regarding her. *Hicks,* 509 U.S. at 510, 113 S.Ct. 2742. If such a reason is proffered, Plaintiff must then demonstrate that the apparently valid reason was actually a pretext for illegal discrimination. *Id.* Throughout the *McDonnell Douglas* test, the burden of proving discriminatory animus remains on Plaintiff.

■ Defendant does not dispute the fact that, as a female, Plaintiff is in a protected class. It also concedes that she was discharged for engaging in prohibited activities. What Defendant challenges is Plaintiff's claim that males engaged in similar conduct, yet were disciplined less severely. Where disparate discipline is alleged, a plaintiff must show that male employees acted in substantially the same manner, yet received a lesser degree of punishment. *See Moore,* 754 F.2d at 1106. Such a showing usually requires direct comparisons in order to raise a presumption that Defendant's disparate treatment stemmed from Plaintiff's sex rather than from her actions alone. *See, e.g., McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283 n. 11, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Therefore, the Court must decide whether Plaintiff has submitted sufficient evidence to establish a prima facie case of gender discrimination. *Id.*

■ Because Defendant's discipline of its firefighters is well documented, there are many potential comparisons available in this case. While exact symmetry between Plaintiff's situation or actions and those of others is not required, they must be materially similar. *See Moore,* 754 F.2d at 1107 (misconduct must be of "comparable seriousness" in disparate discipline comparison). It is the task of the Court to assess the relative similarity of conduct or misconduct relied on by the parties at summary judgment. *Id.* In this case, Plaintiff chooses to compare her actions to those of the male firefighters who, like her, were disciplined for their actions at the June 27, 2004 graduation party. She argues that while both Hicks and Hylton also assaulted females that night, neither was terminated as a result. Specifically, she claims that Hicks physically and verbally assaulted her and that Hylton punched another female firefighter, Hampton, in the jaw.

These incidents, however, differ from Plaintiff's in very significant ways. First, even if one were to accept Plaintiff's contention that the other assaults occurred, the actions of the males were different. Unlike Plaintiff, neither Hicks nor Hylton assaulted a *civilian.* Therefore, their conduct, if it in fact occurred, did not reflect poorly on the Department as it relates to the public.

Second, and much more importantly, the alleged actions of Hicks and Hylton are just that—allegations. In the course of Defendant's investigation, no one could substantiate Plaintiff's claim that Hicks assaulted her. Similarly, no one contends that Hylton intentionally struck Hampton, and only mixed eyewitness reports suggest that Hylton meant to strike Hicks instead. Amid all the ambiguities in the investigation, one thing was never in doubt: Plaintiff assaulted Kilby. Plaintiff admits to intentionally grabbing and tugging at Kilby through the window of a vehicle. This fact distinguishes Plaintiff's case from that of Hicks' and Hylton's. *Abel v. Dubberly,* 210 F.3d 1334 (11th Cir.2000)(plaintiff admitted wrongdoing, but comparator denied it). In addition, Plaintiff's actions came at the end of a series of extended verbal confrontations where Plaintiff intentionally injected herself into a controversy involv-

ing Captain Smithey's feelings. In fact, the incident became so heated that other firefighters had to physically restrain both women. Therefore, the length and extended, heated nature of the assault further distinguishes Plaintiff's assault on Kilby from the unconfirmed assaults by the males. Moreover, whether Plaintiff actually "punched" Kilby during the altercation, as opposed to grabbing, pulling, and tugging, has no bearing on the outcome of the case. Her actions constituted a form of an assault and violated Department rules.

■ A further reason exists for granting summary judgment. The Court evaluates the legitimacy of the decision maker's decision based on the information available to him or her at the time of the decision. *Swackhammer v. Sprint/United Management Co.*, No. Civ.A. 03–2548–CM, 2005 WL 1319058 (D.Kan. May 13, 2005). Even accepting Plaintiff's account of the facts as true, Defendant can only be held accountable for disparate treatment if its decision makers had reason to know that alternative accounts were false at the time they made their choices regarding punishment. It is only the decision maker's belief at the time that the decision is made that is the relevant inquiry—not whether the information is later proven to be false. *Id.* The fact that Plaintiff believes the decision was poorly made and based on erroneous factors is irrelevant. "Negligence or poor judgment do not establish intent to discriminate." *Id.*, at *21. Here, Plaintiff simply argues that the investigation was "markedly unfair" because investigators "discounted her version of events." (Pl.'s Mem. 10.) However, she fails to show the investigation was biased so as to amount to gender discrimination itself and that Teeters should have known this and disregarded the recommendation.

■ The circuit courts, including the Fourth Circuit, have recognized that when the decision maker receives biased information, liability may be based on imputed discrimination often denominated as a "cat's paw," rubber stamp, subordinate bias, etc., theory. *Hill v. Lockheed Martin Logistics Management, Inc.*, 314 F.3d 657, 669 (4th Cir.2003); *E.E.O.C. v. BCI Coca–Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 487 (10th Cir.2006). When the charge is that the decision maker relied on a biased report, the proof will normally consist of showing that the subordinate concealed or presented false information. *Dunn v. City of High Point*, 68 F.Supp.2d 672, 680 (M.D.N.C.1999). Plaintiff must show that the omitted or false information caused the adverse employment action. *Brewer v. Board of Trustees of the University of Illinois*, 479 F.3d 908 (7th Cir.2007). In this, Plaintiff's proof is wholly lacking.

Plaintiff fails to show that the investigations and recommendations were themselves deficient for being the product of gender bias, and the record actually suggests otherwise. She criticizes the committees for believing or disbelieving certain information, but fails to show that gender bias was the reason. In addition, within the Department, Chief John Teeters appointed a committee, including a female civilian, to investigate the matter and give its recommendation. (Teeters Aff. ¶ 2.) Soon afterward, Teeters made a formal request for an independent, outside investigation by the Internal Affairs Division of the Greensboro Police Department. (Teeters Aff. ¶ 3.) Only after reviewing the Internal Affairs report and the recommendation of the disciplinary committee did Teeters choose to approve all of the investigators recommendations. (Teeters Aff. ¶ 5.) In short, the decision to terminate Plaintiff was made after ample investigation and deliberation, including by a committee with a female representative and, of special significance, by an outside, independent committee. The fact that Teet-

ers' decision was based on more than one investigation, and that one of them was an outside investigation, creates a substantial hurdle which Plaintiff has not overcome when she contends the decision maker relied on a gender biased report. *Brewer*, 479 F.3d 908 (decision not dependent on single source). Neither the investigation and recommendation process nor the resulting decision discloses any evidence of bias, let alone the gender animus required for a successful discrimination claim.

In addition to comparing her actions to those of Hicks and Hylton, Plaintiff also draws a parallel between her situation and that of a male firefighter, D. Goodwin, who was arrested on May 18, 2004 for assault on a female and interference with an emergency communication. As in the present case, the female allegedly assaulted by Goodwin was a civilian, albeit the assault did not take place at a firefighter function. In addition, unlike Plaintiff, Goodwin denied that an assault occurred, and the charges against him were dismissed by the State. Goodwin's punishment—a one year written reprimand and salary freeze—resulted from his "failure to be truthful for needing personal leave," rather than the alleged assault. (*See* Nix Dep. 72.) As stated previously, the fact that Plaintiff's conduct was substantiated through her admission and the comparator's was not proven is sufficient to render the comparison of little or no value. *Abel*, 210 F.3d 1334.

Plaintiff argues that "there is nothing in the record to suggest that the events [leading to Goodwin's arrest] did not occur or that the 'voluntary dismissal' had any bearing on Defendant's disciplinary determination." (Pl.'s Mem. 7.) Of course, this is merely Plaintiff's speculation. The argument fails to recognize that the burden of proof remains on Plaintiff, irrespective of her decision to rely on the *McDonnell Douglas* proof scheme. This means that

the burden is on Plaintiff to prove that a substantially similar incident *did* occur and that Defendant knew that it occurred, rather than on Defendant to prove that it did not. Plaintiff has not met this burden through her comparisons to Goodwin or any other firefighter. While it is true that "the record is replete with other examples of 'conduct unbecoming a firefighter,'" (Pl.'s Mem 7), Plaintiff fails to prove, or even argue, that these incidents were of *comparable seriousness* to her own. *See Moore*, 754 F.2d at 1107. In fact, the incidents Plaintiff cites, including hazing, insubordination, leaving work early, and improper use of shoe vouchers, are completely dissimilar to her own situation and have no bearing on this case.

Therefore, the Court finds that Plaintiff has not established the elements of a prima facie case of disparate discipline based on gender. Specifically, she has not shown that Teeters or other decision makers had before them examples of where males engaged in *substantially similar conduct,* let alone given examples of where such conduct existed and was not similarly disciplined. In fact, Plaintiff has shown nothing to connect her termination with gender in any way.

Because Plaintiff has failed to establish a prima facie case of discrimination, the Court need not decide whether Defendant has given a "permissible rationale for treating [Plaintiff] differently." *Moore*, 754 F.2d at 1106. The undisputed evidence reveals that Plaintiff was treated differently from male firefighters simply because the evidence before Teeters showed that she acted differently. Consequently, there is insufficient proof for a jury to render a verdict in her favor.

**IT IS THEREFORE RECOMMENDED** that Defendant's motion for

summary judgment (docket no. 22) be granted and that this action be dismissed.