[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15072
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 29, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00461-CV-3-LAC-MD

CAESAR WHITE, JR.,

Plaintiff-Appellant,

versus

WENDALL HALL,
M. E. SEEVERS,
Major (Detention),
PAUL CAMPBELL,
Captain (Detention),
RENA SMITH,
Captain (Detention Support),
HOBBS,
Lieutenant (Detention Support),
et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Florida
_____

(July 29, 2010)

Before CARNES, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Caesar White, Jr., proceeding pro se in this employment discrimination lawsuit under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, appeals from the district court's grant of summary judgment in favor of the following individual defendants associated with his former employer, the Sheriff's Office of Santa Rosa County, Florida: Sheriff Wendall Hall, Major M.E. Seevers, Captain Paul Campbell, Captain Rena Smith, Lieutenant Diedre Hobbs, Lieutenant Jerry Ranger, Sergeant Jody Cochran, and Field Training Officer Pamela Moorer. White was fired for insubordination during his first-year probationary period as a jail deputy. White, who is black, claims that the defendants, some of whom are white and others of whom are black, discriminated against him by treating him differently than they treated white employees, and fired him because of his race.

White first argues that the district court erred in granting summary judgment

to the defendants on his claims for due process and equal protection violations under § 1983. He challenges the district court's conclusions that he failed to make a prima facie case of discrimination because (1) as to Hall, Seevers, Campbell, Smith, and Hobbs, he failed to identify a similarly situated comparator who was treated more favorably, and (2) as to Ranger, Cochran, and Moorer, he failed to show that he was subjected to an adverse employment action. He also argues that the district court erred in granting summary judgment on his Title VII claims on the ground that White failed to exhaust his administrative remedies. White further contends that the magistrate judge abused his discretion in denying White's motion to compel production of documents for discovery, that the district judge should have recused himself, and that the defendants violated White's rights under the First and Fifth Amendments.[1]

"[We review] a grant of summary judgment de novo, applying the same familiar standards as the district court." Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001). "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no

---

[1] We reject the defendants' argument that we lack jurisdiction to consider summary judgment as to Title VII and the denial of the motion to compel, both of which occurred before the final disposition of the case. See Aaro, Inc. v. Daewoo Int'l (Am.) Corp., 755 F.2d 1398, 1400 (11th Cir. 1985) (holding that an order granting summary judgment that failed to resolve all the claims asserted by the plaintiff was interlocutory and not appealable as of right, was merged into the final judgment, and was open to review on appeal from that judgment).

genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." Holloman v. Mail-Well Corp, 443 F.3d 832, 836–37 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c)). "[We have] consistently held that conclusory allegations without specific supporting facts have no probative value." Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) (quotation omitted).

## I.

### A.

A § 1983 action alleging a violation of procedural due process requires proof of "a deprivation of a constitutionally-protected . . . property interest." Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994). "Property interests protected by the Constitution are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." Silva v. Bieluch, 351 F.3d 1045, 1047 (11th Cir. 2003) (quotation omitted). "Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." Id. at 1047 (quotation omitted).

Florida law has established a civil service system for Santa Rosa County, and under that system, employees who have served less than one year are probationary employees. Act of April 24, 2002, 2002 Fla. Laws 385 § 1(16). With

4

respect to dismissals, such employees "do not have appeal rights and shall be deemed at-will employees." Id. § 21(1). When White was fired, he was an at-will probationary employee with no appeal rights, and did not have a constitutionally protected property interest in his job. Accordingly, his due process claim fails.

B.

In a § 1983 action, "discriminatory intent is an element to be shown in the same manner as in an alleged Title VII violation when the two claims arise from the same conduct and constitute parallel remedies." Abel v. Dubberly, 210 F.3d 1334, 1338 n.3 (11th Cir. 2000). White has offered no direct evidence of discrimination or racial animus. While he was employed, White never complained about any racial discrimination or harassment. The insubordination charge stemmed from a disagreement between White and his training officer, Moorer, who is also black. Sheriff Hall, who was ultimately responsible for the termination decision, never met White in person and was unaware of his race.

Discrimination claims based on circumstantial evidence are evaluated under the McDonnell Douglas framework. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1322–23 (11th Cir. 2006); see McDonnell Douglas v. Green Corp., 411 U.S. 792, 93 S.Ct. 1817 (1973). A plaintiff establishes a prima facie case by showing that (1) he is a member of a protected class; (2) he was subjected to an

adverse employment action; (3) his employer treated similarly situated employees outside of his protected class more favorably than he was treated; and (4) he was qualified to do the job. Burke-Fowler, 447 F.3d at 1323.

> [T]o determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. When making that determination, we require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.

Id. at 1323 (quotations, citation, and alteration omitted).

With respect to the five defendants who were involved in the termination decision—Hall, Seevers, Campbell, Smith, and Hobbs—White failed to show that they gave more favorable treatment to similarly situated non-minority employees who engaged in similar misconduct. White could not identify any other probationary deputy, of any race, who had been insubordinate and had not been fired. Summary judgment for these defendants was proper because White failed to establish a prima facie case and therefore failed to raise an inference of discrimination.

White also alleged that his immediate supervisors discriminated against him by giving him more difficult assignments and less favorable performance evaluations than the white deputies in his training class. In the public employment

6

context § 1983, like Title VII, prohibits discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment." See Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001) (quoting 42 U.S.C. § 2000e-2(a)). Courts have uniformly read this language to require a plaintiff to establish, as part of his prima facie case, that he suffered an "adverse employment action." See id. However, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." Id. In Davis, we described an adverse employment action as follows:

> [I]t is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way. Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment. . . . [T]herefore, . . . to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

Id. at 1239. Criticisms, negative evaluations, and temporary and non-substantial changes in work assignments are not actions that have a "serious and material effect" on the terms and conditions of employment. See id. at 1241–44.

7

With respect to the three defendants who were not involved in the termination decision—Ranger, Cochran, and Moorer—they were entitled to summary judgment because White did not show that he suffered an adverse employment action at their hands. No alleged action by these three defendants tangibly, seriously, or materially adversely affected the "terms, conditions, or privileges" of White's employment "as viewed by a reasonable person in the circumstances." Davis, 245 F.3d at 1239. Thus, White failed to make a prima facie case as to them and the court correctly granted summary judgment for these defendants.

## II.

A plaintiff may sue for discrimination under Title VII only after he first exhausts his administrative remedies, a process that begins with the filing of a timely charge of discrimination with the Equal Employment Opportunity Commission. Wilkerson, 270 F.3d at 1317. It is not necessary for us to decide whether the district court was correct in determining that White's intake questionnaire and correspondence with the EEOC and the Florida Commission on Human Relations failed to constitute a "charge" that would satisfy the exhaustion requirement. Even if White did file a proper charge and exhaust his administrative remedies, the legal elements and analysis for a discrimination claim under Title VII

8

are identical to the proof and analysis required under § 1983.  See Stallworth v. Shuler, 777 F.2d 1431, 1433 (11th Cir. 1985).  White's failure to present a prima facie case of discrimination under § 1983, as discussed above, also supports summary judgment for the defendants on his Title VII claims.

## III.

We review the denial of a motion to compel discovery under an abuse of discretion standard.  Holloman, 443 F.3d at 837.  The court "is allowed a range of choice in such matters, and we will not second-guess [its] actions unless they reflect a clear error of judgment."  Id. (quotation marks and citations omitted).  The magistrate judge repeatedly instructed White to work with defense counsel and clarify his discovery requests, but White failed to do so.  The record shows that the defendants cooperated with White's discovery requests to the extent they could understand them.  Aside from "surveillance video" that did not exist, it was never clear exactly what records White was demanding that the defendants had not already turned over.  Under the circumstances, we cannot say that the magistrate judge abused his discretion in denying White's motion to compel.

## IV.

We will not consider White's arguments concerning judicial recusal or alleged violations of his First and Fifth Amendment rights, because White never

9

raised them before the district court.  See <u>Access Now, Inc. v. Southwest Airlines</u> <u>Co.</u>, 385 F.3d 1324, 1331 (11th Cir. 2004).  Even if he had, his arguments on those issues are without merit.

**AFFIRMED.**