[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11794
_____

D.C. Docket No. 5:11-cv-00005-CAR


DERON KING,

Plaintiff-Appellant,

versus


BUTTS COUNTY GEORGIA,
VAN G. WHALER,
in his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____
(August 13, 2014)

Before FAY, Circuit Judge, and HODGES[*] and HUCK,[**] District Judges.

PER CURIAM:

_____

[*]Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.
[**]Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

Deron King sued Butts County, Georgia and former County Administrator Van G. Whaler in his individual capacity for employment discrimination and retaliation under Title VII and 42 U.S.C. § 1981.  King appeals the district court's grant of summary judgment in favor of Butts County and Whaler.  King raises two issues on appeal: 1) whether the district court erred by failing to view the facts, and reasonable inferences drawn therefrom, in the light most favorable to King in concluding that King failed to present sufficient circumstantial evidence of race discrimination or retaliation to survive summary judgment; and 2) whether the district court erred in dismissing King's claims against Butts County under 42 U.S.C. § 1981 because he did not specifically state in his complaint that those claims were being asserted through 42 U.S.C. § 1983.

With respect to King's first issue on appeal, the Court reverses because the record contains disputed issues of material fact.  On King's second issue on appeal, the Court also reverses because King gave Butts County fair and sufficient notice of the nature and grounds of his § 1983 claims of discrimination and retaliation.

## I.    FACTUAL BACKGROUND

In January 2008, King, an African American male, applied for the position of Deputy County Administrator for Development in Butts County.  On or about April 16, 2008, Michael Brewer, the Deputy County Administrator for Organization in Butts County, called King and offered him the lower-level position

of Director of Community Development with the understanding that King would be promoted to Deputy County Administrator for Development in the near future. King accepted and, shortly thereafter, began working for Butts County.

On August 8, 2008, Whaler met with King to discuss a three-month performance review Whaler had conducted. King asked why Whaler evaluated him at three months and not at six months, as Whaler originally said he would. King testified that Whaler then tore up the evaluation and told King the evaluation would be completed at a later time. Whaler gave a different account of this meeting. Whaler claimed that after he gave King an unfavorable evaluation, King ripped up the evaluation and became "loud," "disrespectful," and "belligerent."

It is undisputed that King received a 5% pay raise that same day. Whaler claims that the Butts County Board of Commissioners instructed him to give King a raise. However, one of the commissioners testified that Whaler made the decision to give King a raise, and the Board had nothing to do with that decision.

On August 27, 2008, Whaler announced at a staff meeting that he was recommending a reorganization plan, which included King being promoted to Deputy County Administrator. However, a few days later, Whaler sent King a letter stating that King's position would not be reclassified as Deputy County Administrator. Thereafter, on September 19, 2008, King filed his first charge of racial discrimination with the Equal Employment Opportunity Commission

3

("EEOC"), asserting that Whaler had discriminated against King because of his race by refusing to reclassify his position.

Around November 18, 2008, an employee whom King supervised, Artisica Stodghill, complained to a coworker about certain assignments King had given to Stodghill. Another coworker, Christy Lawson, found out about Stodghill's complaints and informed Brewer. Brewer asked Lawson to talk to Stodghill about the issue. Then, Lawson and her supervisor, Billy Singly, interviewed Stodghill about her concerns regarding King's assignments and prepared a written report for Brewer.

On November 24, 2008, when Whaler returned from vacation, Brewer informed him of this new "issue" involving Stodghill and King. The same day, Whaler and Brewer met with Stodghill to discuss the matter, and Whaler instructed Stodghill to send him a written statement describing the assignments King had given to Stodghill.

After the meeting with Stodghill, Whaler and Brewer met with King. This meeting was tape-recorded. They gave King a letter that Whaler drafted, which indicated that Stodghill had filed a complaint against King. Whaler drafted this letter based on Stodghill's written statements. King requested several times that Stodghill be present during the meeting. Although Stodghill was not brought into the meeting, neither Whaler nor Brewer instructed King during the meeting to

4

refrain from discussing the matter with Stodghill. After the meeting, King met with Stodghill in his office to discuss the complaint she had allegedly filed. Brewer interrupted the meeting and escorted Stodghill out of King's office.

Sometime that day, Whaler had written a letter to King stating that King was being placed on administrative suspension with pay effective November 25, 2008. However, after King's meeting with Stodghill, Whaler met with King a second time and placed King on administrative leave with pay for ten days, effective immediately.

On November 26, 2008, King responded to Stodghill's complaint in a memorandum addressed to Whaler and filed a formal grievance against Whaler. King alleged that Whaler improperly suspended King for assigning appropriate work to Stodghill, undermined his ability to fulfill the responsibilities of his position, failed to allow a formal meeting between King and Stodghill, and retaliated against King for filing an EEOC claim. King formally requested that Butts County hire an independent investigator to evaluate Stodghill's complaint. King also amended his EEOC claim to include claims of retaliation based on Whaler placing King on administrative leave on November 24, 2008.

On December 1, 2008, King and Whaler met to discuss King's suspension. During the meeting, Whaler confirmed that King was expected to return to work the following day. Then, King gave Whaler a copy of the grievance and of the

5

amendment to King's previously filed EEOC charge.  After King left that meeting, Brewer informed King that Whaler, after reading King's grievance and amended EEOC charge, instructed Brewer to advise King that his suspension was being extended indefinitely.  King then filed a second grievance against Whaler.  King advised Butts County's attorney, Michael O'Quinn, of this grievance.

Butts County hired Mae Okwandu independently to investigate Stodghill's complaint about the assignments from King.  On December 17, 2008, Okwandu completed the investigation and reported that "none of the aspects of [King's] assignments should have been assigned to an entry-level employee [like Stodghill]."  However, Okwandu also reported that "the actual assignments for [King] were not provided for analysis [sic] neither were the assignments completed by [Stodghill]."

On January 5, 2009, King and Whaler met to discuss the results of Okwandu's investigation.  King submitted a memorandum responding to Okwandu's report to Whaler and the EEOC investigator.  The same day, Whaler wrote to King explaining that, based on Okwandu's report, King was suspended effective January 6, 2009 for ten days without pay.  On January 7, 2009, King wrote a memorandum to Whaler and the EEOC alleging that his suspension was retaliatory and requesting that the EEOC review Whaler's disciplinary actions.

6

At Whaler's request, Whaler and King met at a Chick-Fil-A restaurant on January 19, 2009, the day before King was to return to work. According to King's testimony, Whaler informed King about an upcoming restructuring plan under which King's position would be abolished and replaced by a Director of Community Services. Whaler asked King if he was interested in the position. King responded that he wanted to see the job description and discuss the opportunity with his wife. King then asked Whaler "could you send [the job description] to me, and before I come in…would you be willing to extend additional leave until [I] can talk about that with my wife and get back with you and we can discuss it further before I enter[?]" Whaler said "sure, no problem… [W]ell, just do this for me, and we'll take care of it. You send me an e-mail requesting some time, saying that you're wanting to request additional leave." King responded, "I have no problem with that. I'll go ahead and put that together and get it to you this afternoon. So I can have it today." King claims that Whaler asked King to send the email just to "make it official," but told King he did not have to return to work on January 20, 2009. King emailed Whaler on January 19, 2009 requesting additional administrative leave.

Whaler gave conflicting, sometimes confusing, testimony regarding the January 19 meeting.[1]  Whaler testified that during the January 19 meeting, King asked Whaler for additional administrative leave, but he did not approve King's request.  Whaler also stated that he did not deny King's request, but instead told King that he did not have the authority to grant such leave.  When asked whether Whaler told King that Whaler would ask the Board for approval of King's request, Whaler answered "[n]o."  Next, Whaler testified that he had never seen the email from King requesting additional administrative leave.

During the third day of Whaler's deposition, Whaler was asked whether King requested additional administrative leave during the January 19 meeting, and in apparent contradiction to his previous testimony, Whaler responded "No . . . I'm sure.  At the breakfast meeting, he did not mention anything about administrative leave."  After it was suggested that Whaler's response was inconsistent with his prior testimony on the subject, Whaler was asked again whether King requested additional administrative leave, to which Whaler answered "[to] [t]he best of my recollection, yes."  Whaler subsequently testified that he did not have the authority to approve King's request for additional administrative leave, and had asked King to write a request so Whaler could present it to the Board for approval.  Finally,

---

[1] Whaler testified during his deposition, which was taken over the course of three days— January 25, 2012, March 19, 2012, and April 5, 2012.

Whaler then testified that he did recall seeing King's email regarding administrative leave.

On January 20, 2009, when King did not return to work, Whaler wrote to King informing him that he was terminated for not returning to work as required. Brewer testified that while Butts County typically contacts employees who are late for work to determine why, neither he nor Whaler contacted King on January 20, 2009 prior to terminating him. During oral argument, Butts County and Whaler conceded that, but for King's failure to return to work on January 20, King would not have been terminated.

On January 22, 2009, King wrote to Whaler stating that, based on their January 19, 2009 meeting he was "[t]otally baffled" by his termination. After Butts County terminated King, Singley (a white male) assumed King's duties and supervised all of the employees formerly supervised by King. On January 23, 2009, King filed a second EEOC charge based on his termination.

## II.    PROCEDURAL BACKGROUND

On January 4, 2014, after receiving a Notice of Right to Sue from the EEOC, King filed suit against Butts County and Whaler in his individual capacity. King alleged the following claims: Count I) intentional race discrimination in violation of Title VII against Butts County; Count II) retaliation in violation of Title VII against Butts County; Count III) intentional race discrimination in violation of

9

42 U.S.C. § 1981 against Butts County and Whaler; and Count IV) retaliation in violation of 42 U.S.C. § 1981 against Butts County and Whaler.  King alleged that Butts County and Whaler discriminated against him by terminating him on January 20, 2009 and retaliated against him by extending King's suspension without pay on January 5, 2009 and terminating King on January 20, 2009.[2]

Butts County and Whaler filed a motion for summary judgment, which the district court granted.  First, the district court explained that King's claims against Butts County for discrimination and retaliation under § 1981 failed because Butts County is a state actor and § 1983 constitutes the exclusive federal remedy for violations by state actors of the rights guaranteed under § 1981.

With respect to King's Title VII claims, the district court found that King had established a *prima facie* case of retaliation based on his unpaid suspension. However, Butts County and Whaler proffered legitimate, nonretaliatory reasons for suspending King, namely that King had: 1) fostered a hostile work environment; 2) delegated inappropriate assignments to Stodghill; 3) threatened Stodghill's continued employment; and 4) disobeyed Whaler's instructions not to discuss with Stodghill her complaint.  The district court found that King had not rebutted their proffered reasons.

---

[2] King sued based on four additional instances of racial discrimination and two additional instances of retaliation.  However, as King concedes, those claims are not before this Court.  At oral argument, King clarified that his only claims on appeal are for 1) discrimination based on his termination on January 20, 2009, 2) retaliation based on his suspension without pay on January 5, 2009, and 3) retaliation based on his termination on January 20, 2009.

Additionally, the district court held that even though King established a *prima facie* case of discrimination and retaliation based on his termination, Butts County and Whaler proffered a legitimate, nondiscriminatory and nonretaliatory reason for terminating King, namely, King's failure to report to work on January 20, 2009. The district court next found that King did not produce sufficient evidence to create a genuine issue of material fact as to whether Butts County and Whaler's proffered reason was a pretext for race discrimination or retaliation. According to the district court, "Whaler's vague statements [at the January 19 meeting] caused King to misunderstand his obligation to return to work on January 20th . . . Whaler's poor communication cannot support King's discriminatory termination claim."

The district court then disposed of King's remaining § 1981 claims against Whaler with the same analysis used to dispose of King's Title VII charges and granted the motion for summary judgment.

## III.  STANDARD OF REVIEW

We review the entry of summary judgment *de novo*, "construing all facts and drawing all reasonable inferences in favor of the nonmoving party." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012). The Court "'may not weigh conflicting evidence or make credibility determinations . . . . If the record presents disputed issues of fact, the court may not decide them; rather, [the Court]

11

must deny the motion and proceed to trial.'"  *Id*.  (internal citations omitted).

Summary judgment is appropriate if the pleadings, depositions, and affidavits

show that there is no genuine issue of material fact, and that the moving party is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986).

## A. Standard for discrimination under Title VII

Title VII provides that it is unlawful for an employer "to discharge any

individual, or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-

2(a)(1).  A plaintiff may establish discrimination through direct evidence,

circumstantial evidence, or statistical proof of discrimination.  *Alvarez v. Royal Atl.

Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  Where the plaintiff relies

on circumstantial evidence of discrimination, as in the instant case, the Court

applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* framework, the plaintiff carries the initial

burden of establishing a *prima facie* case of racial discrimination, which "in effect

creates a presumption that the employer unlawfully discriminated against the

employee."  *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

To establish its *prima facie* case, a plaintiff must show that: 1) he belongs to a protected class; 2) he was qualified to do the job; 3) he was subjected to an adverse employment action; and 4) his employer treated similarly situated employees outside of his protected class more favorably. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Even if the plaintiff is unable to provide evidence that a similarly situated employee outside of his protected class was treated more favorably, the plaintiff may still raise the presumption of unlawful discrimination by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

"[I]n cases involving alleged racial bias in the application of discipline for violation of work rules," the plaintiff must also show "either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989). "[A]n employer successfully rebuts any *prima facie* case of disparate treatment by showing that it honestly believed the employee committed the violation." *Id*.

13

Once the plaintiff meets its initial burden of alleging a *prima facie* case, the burden then shifts to the employer to produce evidence of "some legitimate, nondiscriminatory reason" for its employment decision. *McDonnell Douglas*, 411 U.S. at 803. If the employer satisfies this burden of production, "'the presumption raised by the *prima facie* case is rebutted.'" *Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1151 (11th Cir. 2005) (internal citations omitted). The burden of persuasion remains with the employee to show, by a preponderance of the evidence, that the legitimate reason the employer offered was actually a pretext for unlawful racial discrimination. *Texas Dept. of Cmty. Affairs*, 450 U.S. at 256. To show pretext, the plaintiff must "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1279 (11th Cir. 2008).

## B. Standard for retaliation under Title VII

Title VII prohibits retaliation against an employee who has "opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge . . . or participated in any manner in any investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The plaintiff must first demonstrate a *prima facie* case of retaliation by showing that: 1) he engaged in an

14

activity protected under Title VII; 2) he suffered a materially adverse action; and 3) there was a causal connection between the protected activity and the adverse action. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013). Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for the challenged employment action. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). The burden then shifts back to the plaintiff to establish pretext. *Id*.

## IV.  DISCUSSION

### A. The district court failed to consider the facts in the light most favorable to King

On appeal, King argues that the district court erred in failing to view the facts in the light most favorable to King. Specifically, he argues that the district court erred in concluding that no material facts were in dispute despite the strong evidence of pretext he produced. To show pretext, the plaintiff must "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." *Rioux*, 520 F.3d at 1279.

King met his burden in this case. The conflicting testimony regarding the January 19 meeting serves as but one example of a disputed material fact. First,

15

Whaler gave inconsistent and contradictory testimony regarding the meeting. He testified that he did not approve King's request for additional administrative leave. Whaler claimed that he did not deny King's request, but instead told King that he did not have authority to grant him additional leave (but did not tell King that he would request permission from the Board). Next, Whaler answered that he was sure that King "did not mention anything about administrative leave" at the meeting. Finally, Whaler claimed that he could not approve King's administrative leave, but asked King to send Whaler a request to present to the Board. Whaler also gave contradictory testimony about whether he received King's email request. Then, there is King's version of the meeting, which is materially different from Whaler's versions.

The significant inconsistencies in Whaler's testimony together with King's conflicting testimony could lead a rational jury to believe that Whaler was insincere about his "legitimate" reasons for terminating King (that King had failed to return to work that day and previously tore up the evaluation report), and Whaler did not "honestly [believe that King] committed the violation." *Jones*, 874 F.2d at 1540. Because King raised sufficient evidence to establish genuine issues of material fact as to pretext, the district court's granting of Butts County and Whaler's motion for summary judgment as to King's TitleVII claims for retaliation and discrimination, and King's identical § 1981 claims against Whaler, was error.

16

**B. The district court erred in dismissing King's § 1981 claims against Butts County**

King's second issue on appeal is whether the district court erred in dismissing King's § 1981 claims because he did not allege that they were being asserted through 42 U.S.C. § 1983.  On appeal, King points out that Federal Rule of Civil Procedure 8(a) only requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  King acknowledges that § 1983 provides the exclusive remedy against a state actor for violations of § 1981, and that he did not specifically mention "§ 1983" in his § 1981 claims against Butts County.  However, King contends that the factual allegations in his complaint nonetheless clearly indicate his intent to bring those claims under § 1983.  King further contends that because he put Butts County on notice of his § 1983 claims, he complied with the notice pleading requirement set forth in Rule 8(a).

A review of King's complaint supports his contentions.  With respect to discrimination, King alleges elements of a § 1983 claim: 1) "Whaler's conduct described herein was accomplished under color of state and local law"; 2) "Whaler's discriminatory acts described herein were performed within the course and scope of his position as the County Administrator for Butts County"; 3) "Whaler was the final policy-maker for Butts County with respect to King's termination"; 4) "Whaler's decision to terminate King was motivated by race";

17

5) "the law is well-settled that a public employer may not discriminate against employees in the terms and conditions of their employment because of their race"; and 6) "Whaler's decision to terminate King was intentional and willful, with reckless indifference to King's federally-protected rights." With respect to retaliation, King's complaint alleged similar § 1983 elements, including that "Whaler unlawfully terminated King in retaliation for King's EEOC Charge, his subsequent complaints to the EEOC regarding race discrimination and retaliation in the workplace, and his numerous internal complaints of race discrimination."

Butts County correctly responds that § 1983 provides the exclusive remedy against state actors for violations of the rights contained in § 1981, citing *Bush v. Houston County Commission*, 414 F. App'x. 264, 266 (11th Cir. 2011), *Butts v. County of Volusia*, 222 F.3d 891 (11th Cir. 2000), and *Ross v. City of Perry, Ga.*, No. 507CV433 CAR, 2009 WL 3190450 (M.D. Ga. Sept. 30, 2009). Butts County then contends that King's failure to specifically invoke § 1983 is fatal to his claim.

In granting summary judgment in favor of Butts County, the district court relied on *County of Volusia*. In *County of Volusia*, this Court addressed whether § 1981 "contains a cause of action against state actors." *Cnty. of Volusia*, 222 F.3d at 892 n.1. The plaintiff there argued that "the Civil Rights Act of 1991 amended § 1981 to create a cause of action against state actors and that such a cause of action may rely on a respondeat superior theory of liability otherwise prohibited by

18

§ 1983." *Id.* at 892. We disagreed and held that the amendments "did not change § 1981," and "§ 1983 contains the sole cause of action against state actors for violations of § 1981." *Id.*

Unlike the plaintiff in *County of Volusia*, King does not argue that § 1981 creates a cause of action against state actors. He readily concedes that he cannot properly bring a § 1981 claim against Butts County. Rather, he argues that even though § 1983 is not specifically mentioned in his complaint, Butts County was on fair and sufficient notice of King's actual claims under § 1983.

Several circuits have indicated that failure to plead the correct legal theory is not necessarily fatal to a plaintiff's claim when the defendant has sufficient and fair notice of the correct theory. *See Doss v. S. Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987) ("[T]he fact that a plaintiff pleads an improper legal theory does not preclude recovery under the proper legal theory.") (citing *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979) ("The function of an affirmative federal pleading, under Fed. R. Civ. P. 8(a)(2), is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.")); *see also Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010) ("Even citing the wrong statute needn't be a fatal mistake, provided the error is corrected in response to the defendant's

19

motion for summary judgment and the defendant is not harmed by the delay in correction.").

Where, as here, a plaintiff's claims under Title VII are based on the same set of facts as his claims under § 1983, the analysis under Title VII is identical to the analysis under § 1983. *Abel v. Dubberly*, 210 F.3d 1334, 1338 & n.3 (11th Cir. 2000). Thus, the same elements for discrimination and retaliation under King's Title VII claims apply to King's § 1983 claims. King pled in his complaint that Whaler's conduct was accomplished "under color of state and local law" and that those actions affected his "federally-protected rights"—both of which are hallmarks of a § 1983 claim. Thus, because King gave Butts County fair and sufficient notice of the nature of and grounds for his § 1983 claims of discrimination and retaliation such that he may proceed under § 1983, the district court's granting of Butts County's motion for summary judgment was error.

For the above discussed reasons, the district court's granting of Butts County and Whaler's motion for summary judgment is **REVERSED**. The case is **REMANDED** for further proceedings consistent with this opinion.

20